Signed: Patrick M. Flatley
United States Bankruptcy Judge

Dated: Thursday, February 25, 2016 3:50:20 PM

# IN THE UNITED STATED BANKRUPTCY
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FAIRMONT GENERAL HOSPITAL, INC., et al. | ) | Case No. 1:13-bk-01054 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| _____ | ) | |
| | ) | |
| CLIFFORD ZUCKER, in his capacity as Debtor | ) | |
| Representative and Liquidating Trustee, and | ) | |
| UMB BANK, N.A., in its capacity as successor | ) | |
| trustee, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 15-ap-00024 |
| | ) | |
| WESBANCO BANK, INC., STEPTOE & | ) | |
| JOHNSON PLLC, COUNTY COMMISSION OF | ) | |
| MARION COUNTY (WEST VIRGINIA), | ) | |
| ROBERT MARQUARDT, DANIEL | ) | |
| HORNERBRINK, PATRICK BONASSO, DAVID | ) | |
| FOX, MIKE MARTIN, TONI NESSELROTTE, | ) | |
| WALTER OSBORNE, JOHN PANZA, ROBIN | ) | |
| SMITH, RANDY ELLIOT, AND JOHN DOES | ) | |
| 1 THROUGH 99, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Clifford Zucker, in his capacity as Debtor Representative and Liquidating Trustee (the "Liquidating Trustee"), and UMB Bank, N.A., in its capacity as successor trustee with respect to the 2007 bonds (collectively, with the Liquidating Trustee, the "Plaintiffs") seek summary judgment on Counts I and II raised in its First Amended Complaint ("Complaint") against Marion County Commission (the "Defendant"). Specifically, the Plaintiffs request the court enter summary judgment in their favor as to Count I because there are no genuine disputes of material facts as to whether the Plaintiffs benefitted from a transfer of property by the Debtor within 90

1

days before the commencement of the Debtor's bankruptcy case and while the Debtor was insolvent. Similarly, the Plaintiffs assert that they are entitled to summary judgment on to Count II because there is no genuine dispute of material fact that, but for the preferential transfer challenged in Count I, the Defendant was not perfected in the Debtor's property prepetition such that the Liquidating Trustee may avoid the Defendant's interest under § 544 of the Bankruptcy Code. The Defendant argues that summary judgment is not proper as to either claim because the Defendant assigned its interests to a third-party and has thus never been a creditor of the Debtor. As discussed hereinafter, the Plaintiffs' motion for summary judgment is denied as to Count I, however the court finds that the Defendant lacks any interest in the property of the Debtor, such that judgment as to Count II is granted as the Liquidating Trustee's interest is unimpeded because the Defendant lacked a secured interest in the Debtor's property as of the petition date.[1]

## I. JURISDICTION

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) as it pertains to the dispute between the Plaintiffs and the Defendant. Furthermore, in that context, this is a statutorily and constitutionally core proceeding. *See* 28 U.S.C. § 157(b)(2)(F) and (K); *see also Stern v. Marshall*, 131 S.Ct. 2594, 2618 (finding that claims are constitutionally core if they would "necessarily be resolved in the claims allowance process.").[2]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment

---

[1] The Plaintiffs' Complaint survived the Defendant's Motion to Dismiss based upon the court's order entered immediately before the entry of this Memorandum Opinion. In its order, the court found that the allegations in Counts I and II of the Complaint met the plausibility requirement of Rule 12(b)(6); including allegations relating to the assignment of rights by the Defendant. For purposes of this summary judgment analysis, however, the court now adjudicates the causes of action using as evidence those material facts as to which there are no genuine disputes. Thus the analysis by the court has shifted from mere plausibility to a resolution on the merits based upon the record as developed by the parties to this point in the case.

[2] To the extent that this conclusion is rejected on appeal, the remaining opinion should be treated as proposed findings of fact and conclusions of law. Amended Standing Order, Misc. No. 13-12 (N.D.W. Va. April 2, 2013).

must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Demonstrating an absence of any genuine dispute as to any material fact satisfies this burden. *Id.* at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248. Thus, the existence of a factual dispute is material—thereby precluding summary judgment—only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw,* 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

### III. BACKGROUND

On July 29, 2015, the Plaintiffs filed this adversary proceeding against the Defendant and a host of over parties seeking a variety of relief on various grounds emanating from the bankruptcy filing of Fairmont General Hospital, Inc. ("the Debtor").[3] Specifically, Counts I and II of the Complaint name the Defendant and seek to avoid transfers of property that occurred in 2007 and

---

[3] To be clear, both Fairmont General Hospital, Inc. ("FGH") and Fairmont Physicians, Inc. filed for bankruptcy relief on September 3, 2013. The two cases were administratively consolidated and eventually became the subjects of the Joint Chapter 11 Plan of Orderly Liquidation confirmed by the court on April 24, 2015. However, the only transfers at stake in the Complaint relate to FGH as debtor; thus the use of Debtor in the singular.

3

2013 under 11 U.S.C. §§ 544 and 547, respectively. The Defendant moved to dismiss the claims for failure to state a claim upon which relief can be granted on August 21, 2015. The Plaintiffs responded by amending their Complaint on August 24, 2015. The Defendant again moved to dismiss for failure to state a claim on September 30, 2015. On November 6, 2015, the Plaintiffs objected to the Defendant's motion to dismiss and moved for summary judgment. The motion to dismiss has been denied by an order entered immediately before the entry this memorandum opinion.

The facts of this case are largely undisputed. In order to finance the construction and operation of a new facility (the "Healthplex"), the Defendant issued $13,700,000 in hospital revenue bonds. In exchange, the Debtor provided the Defendant with certain security interests. According to a July 1, 2007 Loan Agreement (the "Loan Agreement"), the Debtor granted the Defendant a security interest in general intangibles described as "all receipts, revenues, income, and other moneys received by or on behalf of [the Debtor], and all rights to receive the same, . . . and the proceeds thereof, . . . whether now existing or hereafter coming into existence and whether now owed or hereafter acquired by [the Debtor]." ("Gross Revenues"). The Loan Agreement required the Debtor to grant a deed of trust for the Healthplex to WesBanco to hold in trust for the Defendant's benefit.

On the same day, the Defendant and WesBanco executed a Trust Indenture, which assigned to WesBanco certain rights obtained by the Defendant per the Loan Agreement.[4] The only rights from the Loan Agreement retained by the Defendant were the right to receive from the Debtor payment of necessary reasonable administrative expenses within 10 days of the request for payment, the exception from liability to the Debtor for any claim arising from insufficient

---

[4] Specifically, the trust indenture provides:
> [T]he Issuer, in consideration of the premises and the acceptance by the Trustee of the trusts hereby created and for other good and valuable consideration . . . in order to secure the payment of the principal of and interest on the Bonds (as hereinafter defined) issued hereunder and the performance and observance by the Issuer of all the covenants expressed herein, and in the Loan Agreement, and in such Bonds, does hereby irrevocably assign . . . and grant a security interest in and to the Trustee . . . as security for the performance of the obligations of the Issuer under this Indenture, the following: (a) all of the rights and interests of the Issuer under the Loan Agreement except for the rights of the Issuer under Sections 402(d), 505(g), and 701 of the Loan Agreement and except for the rights of the Issuer to receive notices and to grant approvals, consents and waivers . . . .

insurance under the loan agreement, and indemnification rights for any cause of action brought about by the Debtor's actions. Thus, the Trust Indenture assigned the Defendant's security interest in Gross Revenues of the Debtor to WesBanco. WesBanco also became the Indenture Trustee through the Trust Indenture and thus undertook various fiduciary obligations to bondholders.

The Trust Indenture obliged WesBanco to properly record the security interest in the Debtor's Gross Revenues. WesBanco hired Steptoe to do so, and Steptoe filed financing paperwork in that regard with the West Virginia Secretary of State on July 16, 2007. The financing statement filed on WesBanco's behalf listed the Defendant as the borrower and WesBanco as the secured party. On May 11, 2011, Steptoe caused a continuation statement relating to the original financing statement to be filed with the West Virginia Secretary of State, again naming WesBanco as the secured party and the Defendant as the borrower. On July 17, 2013, Steptoe, on WesBanco's behalf and in an apparent attempt to correct the previous financing and continuation statements, caused a new financing statement to be filed. The new financing statement listed the Defendant as the secured party and the Debtor as the borrower.

On September 3, 2013, the Debtor sought bankruptcy protection under chapter 11 of the Bankruptcy Code. On April 24, 2015, the court approved a sale of substantially all of the Debtor's assets, confirmed the Debtor's Chapter 11 Plan of Orderly Liquidation, and appointed Clifford Zucker as the Liquidating Trustee. The confirmed plan provides that holders of general unsecured claims against the Debtors will receive less than 100% of their allowed claims.

The Plaintiffs now seek to avoid the financing statement filed July 17, 2013, as a preferential transfer under 11 U.S.C. § 547. The Plaintiffs further seek to avoid any remaining interest of the Defendant in the Debtor's Gross Revenues as an unperfected security interest avoidable by a hypothetical lien creditor under 11 U.S.C. § 544. In response, the Defendant asserts that the Defendant was not a creditor of the Debtor, thus no preferential transfer occurred.

## IV. DISCUSSION

The Plaintiffs assert two causes of action against the Defendant: Count I of its Complaint seeks to avoid the recordation of the 2013 financing statement as a preferential transfer under § 547 of the Bankruptcy Code. In Count II, the Plaintiffs seek a declaration that they have a superior interest in the Debtor's Gross Revenues under § 544 because the 2007 financing statement was ineffective to perfect a security interest in the Debtor's Gross Revenues. The Plaintiffs assert that they are entitled to summary judgment on both counts because there are no genuine issues of

material fact and they are entitled to judgment as a matter of law. The Defendant argues, however, that summary judgment is not proper on either count as they are not a creditor of the Debtor and lack an interest in the Debtor's collateral.

A. *Count I: Avoidance of the July 2013 Transfer Under 11 U.S.C. § 547*

The Plaintiffs assert that summary judgment should be granted in their favor as the 2013 filing of a financing statement created a perfected security interest in the Debtor's property within 90 days of the Debtor's bankruptcy petition while the Debtor was insolvent and as there are no material facts in dispute suggesting otherwise. The Defendant argues that, by way of its assignment of interests to WesBanco, it was not a creditor of the Debtor, thus no transfer of the Debtor's property was made on behalf of the Defendant. Both parties assert that the Defendant transferred many of its interests under the Loan Agreement to WesBanco by executing the Trust Indenture. The Defendant additionally asserts that it transferred all of its rights in the Debtor's collateral, and the record supports this contention. Moreover, the Plaintiffs do not dispute this claim.

The Bankruptcy Code permits the trustee to avoid any transfer of an interest of the debtor if the transfer is:

> (1) To or for the benefit of a creditor;
> (2) For or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) Made while the debtor was insolvent;
> (4) Made —
>     (a) on or within 90 days before the date of the filing of the petition; or
>     (b) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) That enables such creditor to receive more than such creditor would receive if —
>     (a) the case were a case under chapter 7 of this title;
>     (b) the transfer had not been made; and
>     (c) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The conjunctive nature of the statute requires a plaintiff to satisfy all five elements in order to avoid a transfer as preferential. *In re Salamone*, 231 B.R. 628, 634 (Bankr. N.D. Ohio 1999). First, the party receiving either the transfer, or the benefit of the transfer, must be a creditor of the

debtor. 11 U.S.C. § 547(b)(1). The Bankruptcy Code provides that a creditor is an "entity that has a claim against the debtor that arose at or before the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). The Code further defines "claim" as a right to payment or right to an equitable remedy for breach of performance. 11 U.S.C. § 101(5). Although the Code broadly defines "claims," the definition is not without limits such that a claim must contain "all of the elements necessary to give rise to a legal obligation—'a right to payment'— under the relevant non-bankruptcy law." *In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D. Tex. 1992) (citations omitted); *see also In re Bennett*, 175 B.R. 181 (Bankr. E.D. Pa. 1994). As the definition makes clear, an entity must presently possess a claim against the debtor on the petition date in order to be a creditor. Notably, an entity ceases to be a creditor upon satisfaction of a claim, or upon assignment of all interest in a claim. *In re Fullenkamp*, 477 B.R. 826, 831 (Bankr. M.D. Fl. 2011).

When the Defendant executed the Trust indenture on July 1, 2007, it assigned its interests under the Loan Agreement to WesBanco. Although the Trust Indenture specifically enumerated certain rights retained by the Defendant, the Defendant's rights do not amount to claims under the Bankruptcy Code. Specifically, the Defendant retained the right to receive payments of necessary administrative expenses within 10 days of requesting such payment if administrative expenses arise, exceptions from liability arising out of the operations of the Debtor, and indemnification rights from the Debtor. Those rights do not amount even to a contingent claim held by the Defendant. *See In re Symes*, 174 B.R. 114 (Bankr. D. Ariz. 1994) (differentiating between contingent claims and claims that could arise upon the occurrence of a condition precedent). The Defendant has thus never been a creditor of the Debtor. Thus § 547 is inapplicable as to the Defendant as it only permits the avoidance of transfers to or for the benefit of a creditor. Because § 547(b) is written conjunctively, no further analysis of the remaining elements is necessary based upon the court's finding that the Defendant is not a Creditor of the Debtor.[5]

B. *Count II: Avoidance of the 07 Transfer Under 11 U.S.C. § 544*

---

[5] Notably, the Plaintiffs asserted during a hearing regarding their motion that they seek to avoid the transfer as to the Defendant because the Defendant is listed as the secured party on the 2013 financing statement. While the court finds the Plaintiffs' argument in this regard to be facially plausible, the identification of the Defendant as secured party in that document is not determinative of the issue as to whether the Defendant is a creditor of the Debtor, and in the court's opinion does not make it so.

Notwithstanding the court's denial of summary judgment on Count I, the Plaintiffs are entitled to the relief that they seek insofar as they have an interest in the Gross Revenues that is unencumbered by any interest of the Defendant. The Plaintiffs assert that there is no genuine issue as to material fact that the 2007 transfer of a security interest in the Debtor's Gross Revenues is not perfected, and is thus avoidable by operation of law under 11 U.S.C. § 544 and W. Va. Code. § 46-9-317(a)(2). The Defendant does not raise a clear objection to this assertion; rather it asserts that it is not secured in the Debtor's Gross Revenue as they were merely misidentified in the 2013 financing statement.

Section 544 of the Bankruptcy Code provides a trustee (or debtor-in-possession) with certain avoidance powers made available under state law. Specifically, the trustee in bankruptcy assumes "the status of a hypothetical judgment lien creditor . . . [who] extends credit to the debtor at the time of filing and, at that moment, obtains a judicial lien on all property in which the debtor has any interest that could be reached by a creditor." *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006). From the position of a hypothetical lien creditor, the trustee then takes priority over any unperfected security interests attached to the debtor's property or any interest for which a financing statement has been filed that has not attached to the collateral. W. Va. Code § 46-9-317(a)(2). If the creditor's interest is not perfected and or if a financing statement is filed but not related to an attached security interest before a bankruptcy petition is filed, the creditor "stands as a general unsecured creditor who must defer to the trustee." *LMS Holding Co. v. Core-Mark Mid-Continent*, 50 F.3d 1520, 1523 (10th Cir. 1995) (citations omitted).

West Virginia law adopting Article 9 of the Uniform Commercial Code ("U.C.C.") governs when and how a security interest is perfected. A secured party may generally perfect an attached security interest in one of four ways: (1) automatic perfection upon attachment, (2) filing a financing statement with the West Virginia Secretary of State, (3) control or possession of certain collateral, or (4) filing a financing statement with a specified governing body. W. Va. Code § 46-9-310. The method of perfection permitted under Article 9 depends on the type of collateral. To perfect an interest in general intangibles, a secured party must file a financing statement with the Secretary of State or obtain control over the collateral. W. Va. Code § 46-9-312. For a financing statement to effectively perfect a security interest, it must be free from seriously misleading errors. W. Va. Code § 46-9-506. A financing statement that fails to correctly provide the name of the debtor is seriously misleading, and therefore ineffective. *Id.* If a security interest lacks an effective

8

financing statement and the creditor has not, or cannot, perfect its interest by another method, the security interest remains unperfected.

A filed financing statement that is not related to an underlying security interest does not perfect an interest until it relates to an attached security interest. W. Va. Code § 46-9-308(a). For a security interest to attach to collateral, and thus become enforceable against the debtor, the secured party must give value in consideration for the security interest, the debtor must have rights in the collateral, and the debtor must authenticate a security agreement. W. Va. Code § 46-9-203(b). Thus, a financing statement referencing a secured party validly perfects an interest only if (1) it relates to a creditor that possesses an interest in property which secures payment or performance of an obligation, (2) the security interest is attached to the collateral, and (3) the financing statement is effective.

Financing statements filed before the creation of a security interest, or before such a security interest attaches to the collateral do have some legal effect under W. Va. Code § 46-9-322. Under that provision, priority between competing secured parities is determined by analyzing which party filed or perfected its security interest first. W. Va. Code § 46-9-322(a)(1). Nonetheless, any interest created as a result of such a filing may be avoided by the bankruptcy trustee under W. Va. Code § 9-317 as described above.

The Plaintiffs are correct in asserting that the 2007 financing statement is materially misleading, as it fails to properly identify the Debtor as the debtor in the financing statement. The Defendant does not dispute this fact. The Plaintiffs are also correct in asserting that the Defendant does not hold a valid, non-avoidable lien or security interest on the Debtor's Gross Revenues. This claim is not in dispute as the Defendant also asserts that it does not have a lien or security interest in the Debtor's Gross Revenues. The parties are in agreement that the Defendant assigned its security interest in the Gross Revenues. Because the Defendant assigned its security interest to WesBanco, it no longer possesses the authenticated security agreement necessary to attach to the Debtor's collateral in accordance with W. Va. Code § 46-9-203(b). Thus, in accordance with W. Va. Code § 46-9-317, the trustee takes priority over the Defendant despite the 2013 financing statement because that financing statement does not relate to an attached security interest of the Defendant.

## V.  CONCLUSION

Although summary judgment in favor of the Plaintiffs is improper as to Count I, the Plaintiffs receive all of the relief they requested through the resolution of Count II.[6]  Specifically, the Plaintiffs sought to avoid the legal effect of the 2013 transfer as to the Defendant under Count I in order to allow the trustee in bankruptcy to take possession of the Gross Revenue unencumbered by the Defendant.  Although the court is denying the Plaintiffs motion for summary judgment as to Count I, it is in fact granting all of the relief sought by the Plaintiffs by granting summary judgment as to Count II and finding that the Gross Revenues of the Debtor are unencumbered by any interest of the Defendant.

Based upon the foregoing analysis, the court will enter a separate order denying summary judgment as to Count I and granting summary judgment as to Count II.

---

[6] At a hearing on the motion before the court, counsel for the Plaintiffs asserted that it served the motion for summary judgment on WesBanco as well as the Defendant.  Although WesBanco is a named defendant in the Complaint, including in Counts I and II, the motion for summary judgment seeks relief only as to the Defendant.  As the motion did not seek resolution of the claims against WesBanco, this memorandum opinion and coinciding order does not impact the rights of WesBanco.